UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JIM THEYERL,

            Plaintiff,

v.                                                               Case No. 15-C-440

MANITOWOC COUNTY and
BOB ZIEGELBAUER,

            Defendants.

## DECISION AND ORDER

Beginning in 2012, Plaintiff Jim Theyerl alleged that a county employee was viewing pornography on a work computer. He made his allegations public in a fashion the Manitowoc County Board found reckless and unsupported by evidence, and as a result the Board eventually barred him from speaking at Board meetings. Theyerl brought a lawsuit, and this court found that his First Amendment right to speak during Manitowoc County Board meetings had been infringed. The county subsequently settled with Theyerl. In the resolution approving the settlement, the Board stated that Theyerl had made defamatory statements about a county employee. In addition, County Executive Bob Ziegelbauer echoed similar sentiments during a radio interview. In response, Theyerl brought a new federal action alleging that these statements were defamatory and were made in retaliation for his earlier lawsuit against the county. Both sides have now moved for summary judgment. For the reasons given below, the Defendants' motion will be granted and the Plaintiff's denied.

## I. Analysis

Summary judgment is properly granted only if there are no genuine issues of material fact and the moving party establishes that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### A. Retaliation

Both sides have moved for summary judgment as to liability for Theyerl's First Amendment retaliation claim. Theyerl alleges that the County Board resolution approving the settlement with Theyerl, in which it stated that he had "made defamatory statements about a specific county employee," was *itself* defamatory and made in retaliation for Theyerl's lawsuit against the County. He further asserts that Ziegelbauer defamed him on the radio when he stated that Theyerl had accused an "innocent employee" of wrongdoing; had told outrageous lies and spread malicious gossip; and "had no information" to support his charges.

### 1. The Release

The Defendants first argue that a release, which Theyerl signed as a part of the settlement of the first lawsuit, bars any claims for retaliation. The release contains broad language releasing the County and its officials from claims "arising out of" and "related to" Theyerl's "being barred from speaking at Board meetings beginning in June 2012." The Defendants argue that the current retaliation claim is "related to" the speaking ban because it involves the same parties, and the facts giving rise to the current claim would not have occurred but for the bar on Theyerl speaking in June 2012. At their core, both lawsuits reflect discord between the same citizen and his county board, and so in that sense they are undeniably "related."

Their relationship is only superficial, however. Although the "related to" and "arising out

of" clauses are themselves potentially broad, the release connects those clauses to a very specific event—Theyerl's "being barred from speaking" at board meetings beginning in June 2012. By referencing specific, enumerated board meetings several years ago, the release limits its potential scope to what is "related to" a 2012 speaking ban. Here, by contrast, the present claims of defamation and retaliation involve things the *Defendants* said several years later. A lawsuit about what other people said is not plausibly related to a speaking ban placed on the Plaintiff. Accordingly, I conclude that the release does not apply.

**2. Retaliation**

To succeed on a retaliation claim, a plaintiff must demonstrate (1) he engaged in protected speech; (2) the defendant took action against him sufficiently adverse that it would likely deter or chill the exercise of his First Amendment rights; and (3) a causal connection between the defendant's action and the protected speech. *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009).

The focus is on the second element—whether the Defendants' actions were sufficiently adverse that it would chill any of the Plaintiff's First Amendment rights. I begin by noting that the Defendants' speech certainly would not chill the First Amendment right in question here, namely, the right to petition the courts. County boards and executives have no ability to affect, even remotely, any citizen's right to file federal lawsuits. The fact that the Defendants expressed skepticism about the veracity of the Plaintiff's pornography claims would not deter any reasonable citizen from filing a lawsuit. The Defendants were simply voicing a disagreement rather than any kind of threat that would impact a citizen's ability to petition the courts.

Nor would the Defendants' statements be expected to chill *any* kind of protected expression. Government officials often find themselves in positions in which their power allows them to

3

retaliate against members of the public whose views they don't like. A typical case might allege that an official revoked a permit, conducted an audit, or maliciously prosecuted a citizen; the examples are legion. In this case, however, the alleged retaliation is not any kind of government action or abuse of power, but merely *statements* that the Defendants made. If an official merely says that a citizen's claims are untrue, that is no deterrent to the exercise of any protected rights. In fact, government officials have an obligation to speak out, particularly when the conduct of government employees is at issue. Taken to its logical extension, the Plaintiff's position would require that government officials simply remain silent whenever allegations are made against government employees, lest their denials of the allegations somehow be interpreted as retaliation.

In fact, the Plaintiff's claim is premised on an unfortunate irony. The Plaintiff relies on the First Amendment's guarantee of freedom of speech, yet in this lawsuit he uses that very same Amendment as a bludgeon to punish public officials for their own speech. Not surprisingly, courts have looked askance at similar claims. The Fourth Circuit summarized the problem aptly:

> The nature of the alleged retaliatory acts has particular significance where the public official's acts are in the form of speech. Not only is there an interest in having public officials fulfill their duties, a public official's own First Amendment speech rights are implicated. Thus, where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory.

*Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 687 (4th Cir. 2000).

Here, the only retaliation Plaintiff alleges is that Ziegelbauer and the county board said that Plaintiff's claims about pornography were meritless, and, by logical extension, that they were defamatory of a county employee. Even if the Defendants were "wrong" (which is debatable), they

4

are entitled to give voice to their disagreements with a citizen without "retaliating" against him. To find actual retaliation, there has to be something much more than words. *Hammerhead Enters., Inc. v. Brezenoff,* 707 F.2d 33, 38–39 (2d Cir.1983) (holding that a public official's comments must "reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request.")

There might be a narrow exception if a public official's speech consisted of the disclosure of damaging personal information about a private citizen. For example, in *Bloch v. Ribar,* 156 F.3d 673, 681 (6th Cir.1998), the court found retaliation after a sheriff published explicit details of a rape in retaliation for the rape victim's criticism of the sheriff. Clearly, such an action, which was not the expression of an opinion but a vindictive disclosure of evidence, could be sufficiently adverse to chill speech. But here, all we have are allegations that the board and the county executive continued to believe that the Plaintiff was wrong in his ongoing allegations about a single county employee watching pornography. Their public disagreement with Plaintiff's views was well-known and wholly unsurprising, and their statements to that effect were not enough to chill any protected activity.

This is particularly true in this case, where the Plaintiff's allegations are shrouded in uncertainty and seem to be based on little more than gossip. In response to the allegation about pornography on a work computer, the county investigated the allegation of pornography and found no wrongdoing. The Plaintiff takes issue with that investigation, but its conclusion is much firmer evidence than the facts underlying the Plaintiff's own allegation. For example, the Plaintiff falsely claimed, during a board meeting, that he had "thirteen witnesses" who had seen the employee viewing pornography, but it later became clear that few, if any, such witnesses existed. Remarkably,

5

Theyerl admitted that he had not personally witnessed the pornography in question, and in fact he had not even *spoken* to the lone witness he ultimately identified. Instead, the witness in question allegedly saw pornography on a county employee's computer, reported it to her husband, and her husband then reported it to others, including Theyerl. (Case No. 13-C-590, ECF No. 31 at ¶¶ 21-28.) The Plaintiff then decided to make that third-hand rumor into his cause célèbre. Given the flimsy nature of the allegation, the fact that the Plaintiff himself dramatically exaggerated the evidence supporting the claim, and the seriousness of the charge against the county employee, it is wholly unsurprising that the Defendants continue to publicly dispute the veracity of the Plaintiff's allegation. To hold that the First Amendment would *bar* them from speaking out on such a hotly contested issue would turn the First Amendment on its head.

**3. Defamation**

The normal practice for a federal court is to relinquish jurisdiction of an action once the federal claims have been decided. *Wright v. Associated Insurance Cos., Inc.,* 29 F.3d 1244, 1251 (7th Cir. 1994). Although the parties do not discuss pendant jurisdiction, they both appear to want this court to decide the state law claims as well. Here, given the court's familiarity with the subject matter and the prior history of litigation in federal court, I conclude that it would waste judicial resources and inconvenience a state court if I remanded the action. I will therefore decide the state law claims on their merits. *Id.*

As noted earlier, the Plaintiff has complained about a number of statements the Defendants made. He alleges that the statements made on the radio by Ziegelbauer were defamatory. These included statements suggesting that the Plaintiff's lawsuit was a "cowardly scam;" Plaintiff had accused an "innocent employee" of wrongdoing; Plaintiff had made "outrageous lies" and spread

6

malicious gossip; and Plaintiff had "no information" to support his allegations. Theyerl also complains that the county board's resolution stated that he had made defamatory statements about a county employee. In essence, Plaintiff believes, the Defendants' assertions that he had made false statements about an employee were themselves defamatory.

There are three elements in a cause of action for defamation: (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and, (3) the communication is unprivileged and tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her. *In re Storms v. Action Wisconsin Inc.,* 2008 WI 56, ¶ 38, 309 Wis. 2d 704, 722, 750 N.W.2d 739, 748 (Wis. 2008). In addition, defamation plaintiffs who are public figures must also prove by clear and convincing evidence another element, actual malice. Actual malice requires that the allegedly defamatory statement be made with "knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 280 (1964)). Plaintiff has conceded that he was a "limited purpose" public figure with respect to the allegations underlying this action because he was the initiator of the underlying lawsuit and had commented about it in board meetings and on the radio.

The underlying premise of the Plaintiff's case (an accusation of defamation is *itself* defamation) is an unusual one, but it has gone unchallenged by the Defendants.[1] Instead, the Defendants seem to accept that premise but challenge it on a number of bases. The strongest

---

[1]As suggested elsewhere herein, it is common, and even expected, that a defendant will publicly assert that a plaintiff's allegations are untrue. It is doubtful that the commonplace denial of allegations, even when combined with assertions that a plaintiff was telling lies or spreading gossip, could themselves constitute defamation.

7

defense, which I find dispositive, is that the Plaintiff cannot demonstrate that the Defendants acted with actual malice when they made any of their statements.

As recounted above, the underlying truth of Plaintiff's allegations is anything but clear. He did not witness the alleged pornography but merely heard about it third-hand. No one ever confessed to it, and an investigation by the county's information technology staff revealed no pornography stored on the computer in question. Given the steps the county took to investigate the claim, and the fact that the Plaintiff himself fabricated information about the number of witnesses, it would be impossible to conclude that the Defendants knew or had reckless disregard for the truth of their belief that Plaintiff had defamed a county employee. The fact is, even now nobody knows whether Theyerl's allegations were true. Reckless disregard of the truth requires showing that the false statement was made "with a high degree of awareness of ... probable falsity," *Garrison v. Louisiana,* 379 U.S. 64, 74 (1964), but here there is only a moderate chance that the underlying allegations are true in the manner Theyerl has alleged. Reckless disregard is a subjective standard, and given Theyerl's history of exaggerations on the subject, neither Ziegelbauer nor any board member would have believed to a "high degree" that Theyerl was telling the truth. *Id.* No reasonable jury could so find. (ECF No. 20 at ¶ 10.)

Theyerl relies on a deposition of David Voelker, which Theyerl states he circulated among the county board members to support his claim. Voelker, a six-year employee of the county's highway department, testified that on a single occasion he witnessed a photo of a nude woman on another employee's computer. (ECF No. 13-5.) This occurred at the main highway office on Highway 310 and lasted for two seconds. (*Id.* at 24:18.) Voelker cannot say whether the other employee viewed the image intentionally or whether it was the result of a popup ad or spam email.

8

Nor can he say exactly when this happened, except that it would have been before 2009, when he left county employment. Nevertheless, based on this deposition, Theyerl argues that the county board members would have known that Theyerl was telling the truth.

Theyerl's reliance on the deposition requires an expansive, and revisionist, view of what he actually alleged. If he had merely claimed that someone, somewhere, had viewed pornography at work, then Voelker's deposition might be relevant evidence that such a claim was true. But the question is whether the Defendants believed Theyerl's *specific* accusations about pornography, i.e., that an employee in the county's airport office (not the main highway office) had been viewing pornography *in 2012*—at least three years after Voelker left county employment. Theyerl had suggested that the pornography viewer's conduct was criminal ("I want people prosecuted for doing this"), intentional and ongoing, *not* that it had occurred three or more years earlier on an isolated occasion. The Voelker deposition simply has nothing whatsoever to do with Theyerl's allegation that pornography was actively being watched in the airport office in 2012.

In sum, the Defendants' claims that Theyerl had engaged in defamation and lies was not defamatory because their speech was either actually true or was made without reckless disregard for the truth.

**II. Conclusion**

For the reasons given above, the Plaintiff's motion for summary judgment is **DENIED**. The Defendant's motion is **GRANTED**. The case will be dismissed with prejudice. The clerk will enter judgment accordingly. **SO ORDERED** this 2nd day of December, 2015.

                                            /s William C. Griesbach
                                            William C. Griesbach, Chief Judge
                                            United States District Court